You may proceed. Good morning, Your Honor. My name is Christina Henry, and I'm here on behalf of the appellant and the cross-appellant, Rupanjali Snowden. I have three issues today which I'd like to summarize in order of importance. The first issue is a Supreme Court ruling in FAA v. Cooper. This decision, we believe, abrogates Sternberg v. Johnston, and because of it, we believe that this case is no longer good law. Secondly, irrespective of the Cooper decision, the conditional counteroffer by Check Into Cash to Ms. Snowden did not remedy the automatic stay. Thirdly, irrespective of the first two arguments, the bankruptcy court erred in failing to award attorney's fees as an additional remedy under Section 105A of the bankruptcy court. Beginning with the Cooper decision, I'd first like to note to this court that actual damages is an ambiguous phrase, and the Sternberg court has acknowledged that. That is not an issue in the Sternberg decision. What is an issue in the Sternberg decision is how that court decided to determine the intent of the statute and the congressional intent of 362K1 by going to Black's Law Dictionary for an additional definition when they already had one. This court did not abrogate the Dawson decision. However, in this case, FAA v. Cooper, which is a Supreme Court decision about the Privacy Act, yes. I mean, it's something totally different from what we're dealing with here. Honor, I do not believe it is totally different than what we're dealing with here. And the reason is because that court's decision says specifically that actual damages as a term unto itself, the two words, are circular and general and do not bear any meaning into the meaning of a federal statute or the meaning of, in that case, a fee-shifting statute is what they were analyzing. Okay. Yes. I mean, I guess I'll be honest with you. I just don't think your argument on this point is respecting the limited authority we have to discard prior three-judge panel decisions. I mean, it's one thing if the Supreme Court comes along with a case that's in the same area, maybe if it interpreted the same statute and had criticized the way those two words were construed. But it's in a totally different context, and we're still bound by what we've said in this context. I understand your comments, Your Honor. However, when you take the Black's Law Dictionary definition away from the Sternberg decision, the entire analysis of the court stands on its face. It falls. It depends on it. And that's why I believe that it does abrogate this decision, because there wasn't any statutory analysis actually done on the statute itself under 32K1. It depended on that to find that it was a proven injury that results from that damage. And because when those two words come away and you're left with the original Dawson decision, if you try to put the entire Sternberg decision back together, it just doesn't work. I'm not really seeing where Sternberg relies on that, because in Sternberg, you know, they're not saying you can't get damages. They're just saying once the stay was remedied, you're not going to get – it was attorney's fees there, right? Correct. For going after remaining damages. Yes. And the question is the remedy itself is dependent on Black's Law Dictionary, the definition. If I read it here, it says, they depend on it because it's to compensate for a proven injury or loss of damages that repay actual losses. And then the Sternberg court goes on to say that they are damages resulting from those losses. That's all new information that came out of that definition. It's not in the statute itself. The statute itself uses words like recover. It doesn't use the word recoup. Looking at this in preparation for this hearing, I noticed in the first paragraph of the Sternberg decision, they've replaced the word recover with the word recoup. Why? Because recoup goes very adequately with the definition from Black's Law Dictionary. In addition, the analysis of the statute itself, the structure, the additional words were never actually reviewed. So remedying – Let's just say that – Remedying is remedying what? Let's just say we're kind of hemmed in by Sternberg, given the nature of the Supreme Court's case in Cooper. What then – you said you had a second point, and that is this offer of settlement. Yes. The second issue, Your Honor, is that the court here found that the stay was remedied when a conditional counteroffer was made by checking a cash to Ms. Snowden. And it is our contention that that offer could not have remedied the automatic stay. It was nothing more than a counteroffer. And I'd like the court to actually take a look at it with me, if possible. The counteroffer says that checking a cash was not – Can I just – Yes. Do you want us to look at it with you? Sorry. Is this email? Yes, correct. What's the – is it 108? Yes. Okay. Sorry. Okay. And when you – this was actually a counteroffer. The original offer was $25,000, and I think it's important to point out that the ultimate judgment was in excess of $25,000. It was $28,000 and some. The counteroffer here does not acknowledge that it's a willful violation of the stay, and it does – and it includes an amount, $1445, which was less than the actual damages that the court actually approved up until that point. Let me – I read that. I mean, I've read this email already. Yes. So let me just ask you, is it right to read this as them saying, we're willing to pay you the $1445, but only if you give up your ability to pursue us for, let's say, emotional distress damages and the rest of what you were seeking? When they have not acknowledged that it's a willful violation, they haven't remedied. This is different than the Sternberg decision. Yeah, but that's a little bit different question. Okay, go ahead. In other words, you read this email as saying, here's the amount of money we're going to give you, kind of take it or leave it. We're not going to give you anything else. This would be full and final settlement. That is the way we take it. It is listed as an offer, an account or offer. So it's less than what you think are the amount of economic damages plus the emotional and other damages. And this is also more powerful than a Rule 68 offer, even on the economic damages piece alone. The client received more in overdraft fees from the court, received more in attorney's fees up until May 20, 2009, from the court, irrespective of emotional distress and punitive damages. So let me get this straight. So once your client sees this and decides this isn't full satisfaction, presumably to her satisfaction, then the case embarks on a dispute over whether there was a stay violation, correct? Yes, Your Honor. So then there's whole litigation. Does Check into Cash ever admit that there's a stay violation? They never admit that there's a stay violation, and even in they never refunded the amounts to the debtor until the end of the evidentiary hearing. And it's our position that if you read the briefing now, they still have not corrected their actions. There's no acknowledgment that there was any problem with their procedures. There's still an acknowledgment that the debtor should have told them in a different way that would have been more to their liking. What if they had said, okay, you got me. I got a stay violation. So here's my best calculation of what I think you've spent on attorney's fees up to this point plus the amount we seized plus any other fees. So we think there's a stay violation. Here's your check. What would that have done? I believe it would have precluded her from continuing with emotional distress damages and punitive damages. If she had accepted that. She would have been foreclosed from them, yes. Okay, now let's say, though, she says, well, I accept that. At least you've said it's a stay violation and you're not going to keep my money out of my account anymore. You're going to give it back to me. Under Sternberg, would that have been end of the story? I do not believe it would be the end of the story because this case has particular facts of, well, under Sternberg, the court ultimately found more damages than what she was offered. So if it had been enough, that would be fine. I want to point out one more thing. On exhibit number 104, and this might be an exhibit the court hasn't looked at yet, this actually has the physical notes from the attorney from checking the cash where she's written the notes about my initial offer for $25,000 and the return call and so forth. On her physical handwritten notes on this exhibit 104, there is a list of the improper phone calls that had been taken by checking a cash to my client. So you have an issue here where, aside from money, aside from attorney's fees to stop it, the person giving the offer knows there's emotional distress damages. They know that there's a problem. They know that their client has been calling, and there's no remedy here for the calling. And I ask, and maybe I missed this in the briefs, but I think they offered up three hours of attorney's fees. They offered a random amount. But was it three hours? It was more than that, Your Honor. Okay. And is there anything in the record that shows us that amount is too small even at that point? Yes, there is, Your Honor. There is a document, and because there were prior rulings concerning the attorney fees, there were motion proceedings, the attorney fees up until May 20th, and that amount was determined by the court, and it's in the judgment on 110, and it was determined to be $25,3855. So it was $2,538.55, as opposed to the arbitrary amount of $720 that she offered. And the overdraft return fees that were ultimately awarded by the court were $370, and the amount that she arbitrarily offered were $150. But the biggest issue here is that 363K has a mandatory right to emotional distress and punitive damages, and that's just not being accounted for. I want to briefly touch with the third issue, which is the 105 damages. If this court takes the position that Sternberg is still good law, then the question arises, is that really what the court determined? Because we really have a problem here where a creditor can give a minimal amount of damages and get away with never litigating an emotional distress claim or a punitive damages claim, which is certainly what the court intended. And the contempt power of the court and the ability to do inherent sanctions we believe is still available as an additional remedy here. And it makes sense as an additional remedy if those fees are being cut down to just a result of the damage itself. And here is a perfect example. In the middle of this case, she filed the complaint. Well, not filed the complaint, but yes, the offer was done in the time of May 2009. The court determined it's a willful violation of December 2009. No funds were sent. No corrective actions were taken. The order was ignored. There was a violation of a definite specific order at that point, for sure. It continued with all the way through the evidentiary hearing, closing arguments, still making the same arguments as to the amount that they might have to give back, that it shouldn't be as much as the court thought, that they really hadn't done anything wrong. And we closed, now defying the court, the money had never been paid. So it really took that in to get there. Thank you. Good morning, Your Honor. My name is Amit Pranade. With Alex Wu, my colleague, we represent Check into Cash, if it may please the court. I would ask for permission to reserve a minute or two of rebuttal on our cross appeal that Ms. Snowden hasn't addressed our cross appeal at all, so if she's going to on her rebuttal. Well, let me just ask, are you planning to rest on your brief on the punitive damages and the other? Okay. Then you can reference it here. Thank you, Your Honor. Here we have a case in which a debtor has decided to use the automatic stay provision as a sword, not a shield, and she manufactured evidence of her emotional harm in the process. These are exactly the kinds of things that this court and Congress has tried to counsel against in the Sternberg decision and in the Dawson decision, both of which we will talk about. Sternberg is the law of this circuit. I know Ms. Henry has argued that the FAA Cooper decision somehow changes that, but that argument was made to this court about six weeks ago, seven weeks ago, in the Schwartz-Teller decision, and again in that decision this court reaffirmed that Sternberg remains the law of the circuit. Now, there has been an en banc petition filed in that case. It's my understanding that's still pending, but as of now Sternberg is the law of the circuit. And Sternberg holds that once the stay violation has ended, and it's the word ended that matters here. It's at page 947 of the opinion. Once the stay violation has ended, any attorney's fees that a debtor incurs in pursuit of damages are to be paid by her. It's a reflection of the longstanding American rule, and I think what's important here is to recognize I'm with you so far, but obviously trying to figure out whether in fact what your client did here ended the stay violation with respect to the overdraft problem and all that is the question. It seems clear that the phone calls had ended, right? That's correct, Your Honor. That's fine, but looking at the offer that's made in this e-mail, or it's actually a counteroffer, is it your position that as long as your client is willing to pay just the purely economic damages, that you can just ignore entirely any emotional distress damages that were caused by the stay violation? I think there's two responses to that, Your Honor. The first is that we have to remember this is in the context of an attorney's fee award, and attorney's fees are reviewed for an abuse of discretion. On the question of what this e-mail, it's page 108 of the record, what it means and what significance it has, the bankruptcy court saw all the evidence, it heard all the way through trial, and it concluded that this e-mail, which does tender back the funds, was sufficient as an end of the stay violation, and that is a logical inference from the record. It may not be the best date. No, no, no. I mean, yeah, there's no dispute about what the thing says, but I guess as a legal matter, what I'm trying to figure out is to end the stay violation once you've done something that's caused somebody emotional distress, which I think your client clearly did here, is it enough just to say, well, we'll just give you the money back and we'll pay your overdraft fees, and that's it? I guess that's what I'm trying to figure out as a legal matter. I know what the district court will certainly help. Certainly. And, Farron, I think that gets to the second point I wanted to make in answer to your question here, and that is the personal property that was taken here happens to be money, and so I think it creates a level, it sort of creates a little bit of confusion in terms of what is the actual stay violation and what are damages from the stay violation. If instead of money my client had seized a car, for example, what would it take to end the stay violation there? A return of the car, a tender at least of returning the car, some action to end the stay violation. If the debtor had incurred damages as a result of the car being taken, let's say couldn't get to work on time and lost wages or incurred some kind of storage cost because the car is being impounded, those are damages. But the problem I'm having with your client's position here is that I actually would agree with you, I think, if your client had written a check for $1,445 and handed it to Ms. Snowden and said, here you go, please go cash it. And if she had just refused to cash it or ripped it up or whatever she had done, that would have been fine, but this email makes it sound like we'll give you this money, but only if you agree to waive the damages that you're entitled to recover under the statute. I just don't see where you get the authority to do that. I've got two responses to that as well, Your Honor. Okay. The first is that with Your Honor's drawing inferences from the evidence, the trier of fact also did that and concluded that this was sufficient action to end the stay violation. And it doesn't matter whether a reviewing court thinks there's a better date out there, as long as the date that the trier of fact selected is logical and supported by the record. But how do you account for the difference in the overdraft fees of $370 versus $150? Well, again, those are damages. And if the debtor, in this case Ms. Snowden, wants to pursue those damages, she's free to pursue them. But because the American rule exists and Congress hasn't deviated from it in this context, her pursuit of those damages is on her dime. Well, but, you know, the other problem I have that makes this different from Sternberg is that, you know, it seems to me the overdraft fees are not necessarily, I mean, that's part of your, that was your violation. It wasn't sort of consequential. It was what you actually took from her. It's not emotional damages. It's not even that she had to rent another car, in your example. It was actually the amount of money that you charged her, right? No, Your Honor. The $575 is what our client took. The overdraft fees and the bank statements are all trial exhibits. Right. The overdraft fees were fees that the debtor paid to the bank. The bank because she doesn't have. Right. Because the money was taken out. Correct. As a consequence of her withdrawal, her account was overdrawn and she had to pay fees to her bank. The only thing our client took was the $575. Why didn't you just make an offer of judgment? Well, here's the sort of the sequence of events on this. First answer that question. Why didn't you just make an offer of judgment under Rule 68? And then we wouldn't be arguing over this. Well, we had this tender, which, by the way, Your Honor, if you look at page 108 of the email, it doesn't use the word settlement. It doesn't ask for a release. It doesn't ask for anything in return. We tendered this money and Ms. Snowden rejected it. Pages 313 and 314 of the record contain her testimony where we asked her if she was presented with this tender and how did she react to it. It was her choice not to accept this tender. And if the bankruptcy court or this court or any court had selected a date other than May 20th, it would turn the incentives, the breathing spell, on its head. Why do you even need a tender? In other words, if you took her money wrongfully, or maybe you don't think you did, but you realize you better cut your losses, why don't you just send her a check? Well, because we need to know that she's going to – where do we send it? We got no response of any kind. At that point, aren't you in touch with her attorney? And this went to her attorney. Well, then I'm not too persuaded by where would we send the check. The question is if you really want to give the money back, and I've seen this happen before where people say there's a dispute, they could have just returned the money or paid up on the contract, but they don't for whatever reason. So you still have her money. You could just send her a check. If that's really what you're doing is saying here's your money back, nothing's stopping you. She doesn't have to accept it. I mean, if you – the question is what would that check have said on the back of the check? Would it have had a release? See, we don't know because you actually never tendered – you never gave her the money. We gave her the money when we got a response saying send the check directly to our client. Here's her address. That happened after the trial. I think we have to be – But you could have just sent the check to the lawyer because once she's represented by a lawyer, you as a law firm, maybe your client could have done something different. But as a law firm, you would have been the conduit for the check to the attorneys. But that check, even that basic amount was never just sent to her with no strings attached. This is a little bit – well, there's a couple of things I'd like to say in response. First, this is a little bit different than Sternberg or even the recent Schwartz-Tallard case in the sense that because it involves the return of something, it takes two parties to communicate. This wasn't the unilateral recording of a title as it was in Schwartz-Tallard or the unilateral filing of a motion. And the key question in both of those cases and what the bankruptcy court was looking to here is what did the creditor take some action to remedy the stay violation? And this email in which we're tendering back the funds and not asking for a release is some action. Stop right there because you never did answer my question. Actually, we somehow got sidetracked. I'm looking at the language at the bottom, toward the bottom of the email, which explicitly characterizes this as a counteroffer to her $25,000 settlement demand. So how can you say that this was a no-strings-attached tender of the $1,445? Well, the point here is just that the bankruptcy court, which is the prior fact, and which is entitled to review the standard here is abuse of discretion. It's an attorney's fee decision. And when it comes to applying Sternberg to the record, all that is required to affirm the bankruptcy court is to conclude that the bankruptcy court's conclusion is logical from the record and supported by the record. It may be that a reviewing court would think there's a better date out there, but that's not what happens on an abuse of discretion review. Let me just make sure I understand your position. You're saying that this email here is a no-strings-attached offer to give her that amount of money? That's what it says on its face. That's not. It says it's a counteroffer. A counteroffer to her settlement demand to settle the whole case, right? It says we're willing to settle the whole case with you, Ms. Snowden. You give up everything else you could recover from us, and we'll give you $1,445. Isn't that what it says? Respectfully, it doesn't say that, Your Honor. It doesn't ask us. What does her letter say to you? What does the demand say to you? It's not in the record, Your Honor, and my firm wasn't involved, so I haven't seen. At this point in time, we weren't involved, so I haven't seen what happened before. But the point I think that matters here is that the bankruptcy court saw all of these dates, was involved in the entire, had this record before it. It heard Ms. Snowden's testimony where she chose to reject this and continue litigating. And based on that evidence. For good reason. If this was, in fact, a strings-attached offer, she made a smart decision because she ended up getting awarded way more than the piddly amount that your client offered. It may have been a good litigation tactic, but that's what it is. And the fact that the bankruptcy court chose this date, it may not be the best date, but it's not illogical and it's not unsupported by the record. And that's all that's required here. Point me to this if the district court made a factual finding on this. Did the district court find that this was a no-strings-attached offer? Well, it was the bankruptcy court that entered the finding. I'm sorry. The bankruptcy court. Well, what the bankruptcy court said is that this was sufficient to end the stay violation. That this tender. That's not my question. Right. So the answer is no. That's correct. It didn't look for that. But what it concluded, what matters here is that in the bankruptcy court's view, the stay violation ended on this day when this offer was made. This was an action to return the money. And Ms. Snowden could have come back. And I think this question was asked to Ms. Henry is, what if she had come back and said, give me my money, give me the 575, and let's go litigate what damages I have. Well, Sternberg allows that, and she certainly has the right to do it. But see, it's really the opposite. You owe her the money flat up. The 575. Yeah, so just pay her the money. Pay her that. I mean, your client never did that. So instead, the next thing we have is your client contests that there was a violation of the stay, doesn't it? Well, that's in the context of her pursuit of damages. What happened here is this tender was made. Conditional offer, not offer, this communication was made. Ms. Snowden rejects it and proceeds to litigate the matter. And now we're talking about her pursuit of damages. Precisely what Sternberg says is a cost to be borne by each litigant bears its own costs in that context. Now, in the context of litigating over her damages, there was a question about whether electronic presentment of a check fits within an exception to the automatic stay, and that was certainly discussed in the bankruptcy court. But, again, I think the context and the substance here matters. And this makes this different than the case that was before this court a few weeks ago, the Schwartz-Tallard case. Here it was the debtor that had the choice, and she's free to make the choice to continue to litigate and pursue emotional distress and punitive damages. We don't quibble with that. But the expense of that effort, under the American rule and under Sternberg, is to be borne by her. And the bankruptcy court here picked a date based on the record before it. Your position, just as a legal matter, is that it doesn't matter whether that e-mail is a strings-attached, no-strings-attached offer. It doesn't matter because either way it ends the violation? That's correct, Your Honor. The bankruptcy court has the discretion to look at these kinds of communications and determine when a creditor's actions are sufficient to end the stay violation, and the bankruptcy court made that determination. But maybe that determination was an error in light of what's happening here. I mean, they certainly – the determination was made. We have to determine whether under abuse of discretion standard it was an error. That's correct. And the specific question is, is it illogical, implausible, or without support in the record? And I would submit to this court that it's not illogical, it's not implausible, and clearly there's support in it for the record. Now, again, it doesn't matter. Okay, thank you. Thank you, Your Honor. I want to make two points in rebuttal. First, the Sternberg case was not about an offer. It was about vacation of a state court minute order, materially different. Here, when you have money taken, the only thing that will remedy the stay is return of the money. Similarly, as in Sternberg, to the extent that the only thing that would remedy the stay is the vacation of that order. So in this case, there was no return of the money. I also think there's another issue here on the standard to be used. We've been talking about abuse of discretion. I actually think this is an error of law. The only way this could end the stay, under anything that I could think of, would be if it was a formal tender. This was not a formal tender. It does not meet the legal elements of a tender. He indicated that your demand letter or form of demand is not in the record. Is that true? My formal demand letter, there are two places where it is in the record. It's in the e-mail because it was done by voicemail. And it is also under 104 where Ms. Hosey, who is the attorney for checking the cash, was taking notes about returning the call at 4.51 p.m. regarding the $25 demand. Because it wasn't written. $25,000. $25,000. Sorry. $25,000 demand. There wasn't anything written. There wasn't conditions in the same way. It was to settle the entire lawsuit. All right. Thank you. Okay. Thank both of you for your argument and also the briefing. Very interesting case. Snowden v. Checking the Cash is submitted and we're adjourned.
judges: GOODWIN, McKEOWN, WATFORD